IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

EVELYN THOMPSON, )
)
Plaintiff, )
)
v. ) CIVIL ACTION NO.: CV509-101
)
MICHAEL J. ASTRUE, )
Commissioner of Social Security, )
)
Defendant. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Evelyn Thompson ("Plaintiff") filed applications for Disability Insurance benefits and Supplemental Security Income ("SSI") benefits on May 7, 2007, alleging disability commencing on September 20, 2005. (R. 130). After her claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. (R. 83). On September 11, 2008, Administrative Law Judge Morton J. Gold, Jr. ("ALJ") held a hearing at which Plaintiff appeared and testified. The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act, and, therefore, was not eligible for Disability Insurance benefits and SSI payments. (R. 10). On October 16, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (R. 1-5).

AO 72A
(Rev. 8/82)

In her complaint, Plaintiff asserts that the ALJ's determination is not supported by substantial evidence. (Doc. No. 1, p. 2). Defendant asserts the Commissioner's decision should be affirmed. (Doc. No. 20).

## ALJ'S FINDINGS

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pursuant to the Act, the Commissioner employs a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the plaintiff is not engaged in such activity, then the second inquiry asks whether the claimant has a medically severe impairment or combination of impairments. Id. at 140-41. If the claimant's impairment or combination of impairments is not "severe," then disability benefits are denied. Id. at 141. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, subpt. P. App. 1; Yuckert, 482 U.S. at 141. If the impairment meets or equals one of the listed impairments, then the plaintiff

is presumed disabled. Yuckert, 482 U.S. at 141. If the impairment does not meet or equal one of the listed impairments, then the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing her past relevant work. Id. If the claimant is unable to perform her past relevant work, then the final step of the evaluation process determines whether she is able to perform other work in the national economy, considering her age, education, and work experience. Id. at 142. Disability benefits will be awarded only if the claimant is unable to perform other work. Id.

In the case *sub judice*, the ALJ followed the sequential process to determine that Plaintiff did not engage in substantial gainful activity after her alleged onset date. (R. 12). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: carpal tunnel syndrome surgery residuals and obesity. (Id.). At step three, the ALJ determined that Plaintiff's medically determinable impairments were not severe enough to meet or medically equal a listed impairment. (R. 13-14). The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (R. 14). At step four, the ALJ found that Plaintiff was capable of performing all of her past relevant work. (R. 22).

## ISSUES PRESENTED

Plaintiff asserts that the ALJ's determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ failed to show good cause for discounting the opinions of Dr. Amaram and Dr. Sullivan. Plaintiff also states the ALJ did not identify any objective medical evidence to support his finding that Plaintiff could perform medium duty work.

AO 72A
(Rev. 8/82)

3

## STANDARD OF REVIEW

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F. 2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Walden v. Schweiker, 672 F.2d 835, 838-39 (11th Cir. 1982). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## DISCUSSION AND CITATION TO AUTHORITY

Plaintiff asserts that the ALJ failed to show good cause for discounting the opinions of Dr. Amaram and Dr. Sullivan. Plaintiff states, "The Administrative law Judge failed to properly refute or give good reasons for failing to credit the treating physicians'

opinions." (Doc. No. 19, p. 8). The Eleventh Circuit has held that a treating physician's opinion is entitled to substantial weight unless good cause is shown. Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991). Good cause for not adopting a treating physician's opinion exists when the medical opinion is conclusory, or unsupported by objective medical findings or substantial evidence from the record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards, 580, F.2d at 583. If the ALJ rejects the opinion of the treating physician, the judge must specify that he is doing so, and then must articulate his reasons for not giving the opinion substantial weight. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

Dr. Amaram completed a Medical Source Statement, dated July 4, 2008. (R. 503-508). She thought Plaintiff would need to lie down twice per day and elevate her legs during an average workday. (R. 504). She limited Plaintiff to carrying less than ten pounds. (R. 505). Dr. Amaram estimated Plaintiff could stand for less than two hours, and that she would need to alternate between sitting and standing. (R. 505). Dr. Amaram posited that Plaintiff was limited to occasional reaching, handling, fingering, and feeling. (R. 506). Dr. Amaram attributed Plaintiff's limitations to "neuropathy of both lower extremities"; "lumbosacral pain"; and "arthritis of multiple joints." (R. 504-508).

The ALJ delineated a host of reasons for discounting Dr. Amaram's opinion. (R. 18-21). At the outset, the ALJ extensively explained why Plaintiff's allegations lacked credibility, (R. 15-18), thus casting considerable doubt upon Dr. Amaram's opinion to the extent that she relied upon Plaintiff's subjective complaints of pain. The ALJ listed multiple reasons to explain why he placed little weight upon each of Dr. Amaram's

postulated limitations. (R. 18-21). The ALJ discounted Dr. Amaram's opinion that Plaintiff would need to lie down two or three times for several reasons. He noted Dr. Amaram's specialty was not in orthopedics or neurology. (R. 18). Dr. Amaram's own records did not document neuropathy or arthritis in multiple joints—these were two of the three conditions upon which Dr. Amaram premised her assessment. (R. 18). Dr. Amaram's neuropathy and arthritis-related opinions contradicted the medical findings of Dr. Singh, who on June 26, 2008 (just one month before Dr. Amaram authored the opinion in question), issued normal findings. (R. 18-19, 475-476). Dr. Singh's June 26, 2008, report—betraying almost no functional limitation detectable on exam—discounted the probative value of Dr. Amaram's report. (R. 476). The ALJ noted that emergency room records disclosed that Plaintiff had "normal and active range of motion in all extremities, with all muscle groups graded at 5/5, and normal sensory examinations." (R. 19). Most significantly, providers at the Satilla emergency room found that Plaintiff had full, active range of motion; intact senses; a normal gait; and no tenderness on August 9, 2008, the month following the issuance of Dr. Amaram's report. (R. 511).

The ALJ also found that no medical evidence supported any of the physical limitations posited by Dr. Amaram. (R. 19). The ALJ found that Plaintiff's allegations of low back pain were specifically contradicted by the numerous near-contemporaneous physical examinations yielding no evidence of any such impairment. (R. 19; see, e.g., R. 468-469, 473, 476, 511, 533, 542, 543, 551, 614, 616-617). The ALJ observed that Dr. Amaram never identified Plaintiff's supposed need to elevate her legs in treatment records. (R. 19). The ALJ also observed that no physician had ever mentioned any such need, and that even Plaintiff had not alleged such a limitation in her disability

AO 72A
(Rev. 8/82)

6

reports. (R. 19). The ALJ found that Dr. Amaram's opinion that Plaintiff could only occasionally lift even "less than 10 pounds" was: (a) unsupported by Dr. Amaram's own records as well as those of other physicians; (b) contrary to Plaintiff's own testimony and administrative statements that she could lift approximately ten and twenty pounds, respectively; and (c) contradicted by affirmative medical evidence in the record. (R. 19-20). Again, Plaintiff's muscle tone and strength were repeatedly rated as normal throughout the period surrounding Dr. Amaram's assessment. (R. 468-469, 473, 476, 511, 533, 542, 543, 551, 614, 616-617). Dr. Singh, Plaintiff's treating neurologist, first noted possible muscle weakness only on December 19, 2008. He recorded Plaintiff's muscle tone was "normal" but that she exhibited "giveaway" weakness, which suggests malingering. (R. 617).

The ALJ found that Dr. Amaram's opinion that Plaintiff could stand and walk for less than two hours in an eight-hour workday should be rejected because (a) no such limitations were mentioned in office notes and (b) no medically-determinable impairment specified in the record could explain such a limitation. (R. 20). As late as March 2009, Dr. Wallace recorded that Plaintiff had "no difficulty getting on and of[f] the exam table, standing on toes and heels, squatting or hopping." (R. 653).

The ALJ rejected Dr. Amaram's opinion that Plaintiff needed to alternate sitting and standing because: (a) Dr. Amaram did not list such a limitation in her treatment records and (b) there was no evidence of an impairment sufficiently severe to require such a limitation. (R. 20). Next, the ALJ concluded that Dr. Amaram's opinion that Plaintiff was limited with respect to pushing and pulling was deficient because (a) she did not list the limitation in her treatment notes, (b) diagnostic testing generally revealed

only mild impairment, and (c) contemporaneous records yielded results contradicting Dr. Amaram's assessment. (R. 468-469, 473, 476, 511, 533, 542, 543, 551, 614, 616-617).

The ALJ found that Dr. Amaram's conclusion that Plaintiff was limited with respect to reaching, handling, fingering, and feeling was not persuasive because (a) the limitations were not included in treatment records, (b) diagnostics did not suggest such severe results, (c) physical examinations yielded contrary results, and (d) Plaintiff herself informed her own physical therapist that she could perform overhead reaching without any difficulty. (R. 21; R. 344).

The ALJ rejected the environmental limitations outlined by Dr. Amaram because they were (a) undocumented in the treatment records and (b) Plaintiff had not been diagnosed with a condition of sufficient severity to explain such restrictions. (R. 21). The ALJ rejected Dr. Amaram's opinion that Plaintiff would miss more than three days of work per month for the same reasons. (R. 21).

Dr. Sullivan ordered a functional capacity evaluation of Plaintiff and determined that Plaintiff could work at the light duty level, but was restricted to lifting no more than a maximum of twenty pounds. (R. 239). Later, Dr. Sullivan added a ten minute break every hour from repetitive hand activity. (R. 300). Dr. Sullivan noted that Plaintiff displayed "inconsistent effort," "did not seem to have the will to finish the simplest of tasks," and showed signs of "symptom magnification." (R. 300).

The ALJ pointed out why the functional limitations set forth by Dr. Sullivan were overly restrictive. (R. 17). Dr. Sullivan's work restrictions assessment, dated July 7, 2006, was derived from a functional capacity evaluation performed by Billy Carr, an occupational physiologist. (R. 239-240, 300). Both Carr and Dr. Sullivan noted that

Plaintiff's test results suggested that her actual abilities were likely greater than her test results because she had not exerted herself. (R. 239-240, 300). The ALJ was not required to place significant weight upon test results that were not viewed as reliable by either Carr or Dr. Sullivan. (R. 239-240, 300).

The Court disagrees with Plaintiff's contention that the ALJ failed to "properly refute or give good reasons" for discounting the opinions of Drs. Amaram and Sullivan. Substantial evidence supported the ALJ's decision to devalue their opinions. The ALJ complied a thorough and extensive analysis that clearly articulated his reasons for discounting these doctors' opinions.

Plaintiff also states the ALJ did not identify any objective medical evidence to support his finding that Plaintiff could perform medium duty work. An individual claiming Social Security disability benefits has the burden of proving that she is disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). Plaintiff has not met her burden of demonstrating functional limitations greater than those found by the ALJ. Plaintiff asserts that the ALJ's determination that Plaintiff could perform medium duty work ignored objective medical evidence documenting "mild to moderate degenerative disc disease in her cervical, thoracic, and lumbar spines as well as active bilateral carpal tunnel." (Doc. No. 19, p. 7). In making this assertion, Plaintiff fails to identify which portions of the record indicate objective findings of degenerative disc disease and active bilateral carpal tunnel or to assert that these alleged conditions would prevent her from being able to perform medium duty work, much less to meet her burden of showing that these medical conditions caused her to suffer debilitating physical impairment. The

ALJ's review encompassed all the evidence of record and substantial evidence supports the finding that Plaintiff is not disabled.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the decision of the Commissioner be **AFFIRMED**.

So **REPORTED** and **RECOMMENDED**, this 18th day of October, 2010.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE